We will see we have no cases submitted today, so we will take the cases in the order listed on the calendar. First case is Leong versus the INS. Ready to proceed in that case. Thank you. May it please the court. I'm Joran Lyons, counsel for petitioners of Angela and being an associates. Unfortunately, during the pendency of this petition for review, the court has issued decisions in a number of strikingly similar cases, notably Vasquez-Zavala. In Vasquez-Zavala, the court held that submission of an application for asylum prior to the effective date of the 1996 Illegal Immigration Reform and Immigrant Act was insufficient to lock in the ability to apply for suspension of deportation. At the time this petition for review was filed, that was not an issue that had been made clear by this circuit, but it now has, and as a result, I think that this petition for review may no longer be tenable. I am, however, concerned with regard to the issue of voluntary departure. During the pendency of this petition for review, as Azueta Carrillo – Could you speak up a little louder? Yes, certainly. Thank you. I was just stating that although the merits of this petition for review appear in light of recent decisions, most on point being Vasquez-Zavala, as well as last Friday's decision in the Lopez-Urrenda case, the arguments that we've put forward in this petition for review no longer appear to be tenable because of cases that have been issued by this court during the pendency of the petition for review. So I honestly, in good faith, cannot put forward an argument that this petition for review should be granted. I am concerned, though, with regard to the voluntary departure that was granted by the Board of Immigration Appeals. This petition for review was filed in May of 2002 based on a Board of Immigration Appeals order issued in April 11, 2002. In March of this year, this court issued the Azueta Carrillo decision. And in Azueta Carrillo, they held that the longstanding rule of Contreras-Aragon, the en banc opinion from 1988, would no longer be the law of this circuit. The difficulty here is that these petitioners, relying on Contreras-Aragon as it had existed since 1988, are now put in a difficult position. Their voluntary departure period under the new rule lapsed in May of last year. But at that time, in reliance on Contreras-Aragon, they remained in the United States. And if the Azueta Carrillo rule is applied to them, they are today under an order of removal. Well, now, we have an en banc opinion that would allow them voluntary departure. Is that right? Are you referring to Contreras-Aragon? Well, Contreras-Aragon was explicitly overruled in March of this year by the ______. Our court? Yes, by the Ninth Circuit. Not an en banc decision, but ______. I'm suggesting. Well, I understand, Your Honor, but they explicitly reexamined it in light of the 1996 amendments and held that because Congress had changed the underlying rules governing what happens when you depart the United States during the pendency of a petition for review, that one of the ______. So the new case holds what? The new case holds that a voluntary departure period granted by the Board of Immigration Appeals runs from the date that the Board of Immigration Appeals enters its final administrative decision and that the pendency of a petition for review does not affect that period. No, but, you know, we have an even more recent decision that permits that voluntary departure period to be stayed. That's correct, Your Honor, and that's the El-Hemry decision from about 10 days ago. But, again, in that decision, the petition for review was filed almost simultaneously with the issuance of the Zazuata-Carrillo decision in March of this year, and they were able to hustle down to the courthouse and file a motion to stay the voluntary departure period. The El-Hemry opinion explicitly does not address what happens where the voluntary departure period was set to expire prior to Zazuata-Carrillo. There's a footnote saying we're not deciding here what happens where the voluntary departure period expired prior to the ability to file a stay. And my concern here is that for the first 10 months this petition for review was pending, the law of this circuit was contrarios aragon. And as a result, if we apply the Zazuata-Carrillo decision to their case, they're having the rug pulled out from under them. They were informed at the time that they filed the petition for review. And at that time, this petition for review arguably had some merit to it. It's only because of intervening decisions on the merits of this petition that it's become untenable. It's not a frivolous petition for review. It's simply that decisions issued. So what's the solution here? Well, I would like the Court to consider with supplemental briefing, if you find it appropriate, whether the petitioners in this case may make use of the period of voluntary departure granted to them by the Board in light of the fact that when they filed their petition for review and for the first 10 months that petition was pending, the law of this circuit said that there would be a stay in place. Why don't you just make a motion for a stay of voluntary departure non-protonque back to the day? Well, I'd be happy to do so, Your Honor. Are you making it now? Right now. Are you making it? Oh, yes, Your Honor. In light of the argument I've just raised, I would appreciate it if a stay of voluntary departure were issued non-protonque. The Court in the El Hemry decision just 10 days ago held that it did have equitable authority to do so in similar, though not identical, circumstances. And I believe in light of the fact that in the Contreras-Aragon, excuse me, in light of the Zazueta-Carrillo opinion, the petitioners, Mr. Zazueta-Carrillo, in fact, was permitted to use to his advantage the Contreras-Aragon rule as that had been the law when he filed his petition for review. So on that basis, I would very much appreciate it if the Leones would be able to similarly utilize the voluntary departure period that the Board granted to them. Well, why don't you let us hear if the government has any opposition to that motion? Certainly, Your Honor. May I reserve the remainder of my time? You may. Thank you. Good morning. Jamie Dowd on behalf of the Respondent. First, obviously, I would like to just reiterate what opposing counsel has said regarding the ineffective assistance of counsel claims. I don't think you need to argue that. Okay. I think he's conceding, isn't he? Okay. Yes, sir. As far as the voluntary departure issue, the Court did say in El Hemry that it retained the equitable jurisdiction to grant a motion for, say, a voluntary departure. However, in this case, no such motion was ever filed with the Court. He just made an oral motion. So what's your response to the motion? Do you oppose it or not? Well, we would oppose, yes, sir. On what basis? Well, he's made no showing. The equities are clearly with the petitioner, right? I'm sorry? I say the equities are clearly with the petitioner because at the time, you know, this petition for review was filed, the voluntary departure period would not have expired, right? In other words, he got caught up in a case that overtook this petition. Well, the law, as it was changed in 1997, did say that the voluntary departure period ran from the time of the Board's decision. So whereas this Court hadn't actually ruled on that until the Zazueda-Carrillo opinion came down, the law had actually changed at the time that this petition for review was filed. So the petitioners were on notice that if they wanted a stay of that voluntary departure period, they should have filed it at the time they filed the petition for review. So we would oppose on those grounds, not so much in that the Court has said it does retain the jurisdiction to grant the stay, but the petitioners were on notice that they had to file a stay at the time the petition for review was filed. Their failure to do so means that the voluntary departure period did run and it has run out. So these particular petitioners have been very good members of our community, and the immigration judge noted that. They've been diligent. They've acquired businesses. They've had their children in school here. Not a blemish on their records. Isn't that some equity that the government would wish to consider? Well, I'm not sure it's my place to say. I think that that would have been something that possibly could have been relevant had they filed a motion for stay of the voluntary departure period. And it was actually, I'm sure, addressed in the motion for stay of removal that they filed. But at this point, one, it's not appropriate, I think, for me to speculate on whether or not that would entitle them to a grant of a stay of voluntary departure. All right. Let me ask you a different question. Are you familiar with the INS's repapering policy? Yes, Your Honor, I am. Isn't this case eligible for repapering? Well, I believe that, one, it's at the discretion of the service. I know that. I'm just asking whether it's eligible or not. Well, no, Your Honor. Our position would be that it's not because, one, these petitioners were not eligible for the underlying relief that they sought, which would be suspension of deportation, because they were placed into proceedings after April 1, 1997. But isn't that the very reason for the repapering policy? Well, in some ways, yes, Your Honor. However, it is at the discretion of the service. I'm just asking about eligibility, that's all. I wouldn't want to speculate on whether or not they would be eligible for it. That would be for the service to decide whether or not they were eligible for that. What is it that makes them eligible or not eligible? For repapering? Yes. I'm not really sure what the service would look at in terms of whether or not to repaper. But it is a sua sponte sort of something that the service does without any sort of initial, I guess, hurdle that someone would have to cross. So I don't know that there's a particular – that I could lay out a particular groundwork and say if they meet these requirements, then they would be eligible. Would it be appropriate for us to stay the proceeding while repapering is sought? No, Your Honor. That would not be appropriate. Like I said, that's – it's a relief that's at the discretion of the service, and so it's not something that could be sought necessarily by the Petitioners. If the service felt that it was appropriate, that they could have already instituted such proceedings. How is it ever brought to the attention of the service? There are an awful lot of aliens in deportation or removal proceedings. How does the service ever know? Well, the argument was made before the immigration judge that these petitioners were – or sought to be eligible for suspension of deportation relief. He considered those arguments and said that because proceedings had commenced after the April 1, 1997, effective date of the permanent rules, they were not eligible. It went before the board. Eligible for what? They were not eligible for suspension of deportation relief. That's a different question, isn't it? Well, I'm sorry, to kind of further on, they made similar arguments before the board who agreed with the immigration judge. So at any point in that time, the decision could have been made to repaper, I guess, these petitioners. No one would make that motion for repapering. No one would make a motion. It would just be something that the service did if it were appropriate. Well, as Judge Hunt said, how would it come to their attention? It may well be that they aren't entitled to discretionary relief based on extreme hardship, but it would seem that the other factors for repapering on the face are there. So should the BIA have taken that upon itself or referred it back to the service? How does that happen? I think there are two answers to your question. One, as the case stood before the immigration judge, counsel for the service obviously was aware of the issues that were raised. So it could have been something that the service instituted at that time. Number two. But when you say counsel for the service, so it's just on the individual counsel's part, or is there some sort of a more central agency decision? Well, as of right now, there were proposed regulations in terms of this repapering process that have really yet to be agreed on. So I don't know that it's going to be effective for me to try and answer the question of when and where that would happen because I don't. It strikes me odd that it's an individual agency counsel. If you're lucky enough to get somebody that brings it up, that's fine. But if not, you aren't. I didn't mean to imply that. I'm sorry if it sounded that way. I just meant that because it is a service decision and it is a sui sponte decision on the service's part, you know, counsel for the service before the immigration judge was aware of the issues. No, it's not the counsel's decision. But if it were to happen, if the service were to decide that it were a proper remedy, then it would have been done at that time. But it's not something that. Who is the service at that point that would be making this decision? Is it the Attorney General of the United States or is it? Well, it is the Attorney General. Yes, Your Honor. So if in some way or other he had found that this was the situation and relief should be granted, he would have done it and not the individual counsel or anyone else? Well, one, it's not necessarily relief that would have been granted. It would have just been the institution of a different proceeding, placing these petitioners in deportation as opposed to the removal proceedings that they were placed into. But then if that happens, then he would be eligible under the criteria of the old law, right? Well, I can't really speculate. I'm not sure. The immigration judge flatly stated that they would qualify under the old law. Well, the decision does seem to indicate that they could have met the extreme hardship as opposed to the exceptional, extremely unusual hardship. Well, that's exactly what it said. Right. However, they aren't eligible for suspension of deportation because they were placed in proceedings after April 1, 1997. So regardless of what inquiry the immigration judge could have made into their possible eligibility for suspension relief, because they were placed into removal proceedings, they are not eligible for that relief. Aside from whatever showing they could have made, extreme hardship or physical presence, et cetera, they could not meet the cancellation of removal criteria, which is the burden that they had to bear because they were placed in removal proceedings as opposed to deportation proceedings. If the Court has no further questions. Okay. Thank you, Ms. Dow. Your Honors, unfortunately, I would have to point out that in order to utilize the repapering provisions provided by the IHRA transitional rules, you can only move from a person who's already been issued an order to show cause and placed in deportation proceedings to a person who's placed in removal proceedings with the issuance of a notice to appear. And the repapering provisions don't allow a person who's been issued a notice to appear to have their case administratively closed and later be issued in order to show cause. So you can move from a person who is in deportation proceedings to being a person who's in removal proceedings, but you must have an order to show cause to utilize the So your understanding of the repapering proceeding is that a person has to be in a proceeding that's instituted by an OSC? That's correct, Your Honor. That doesn't make any sense, because why would somebody want to move from, you know, from the OSC to the notice to appear under the new law? The reason for that, Your Honor, is because the 96 amendments instituted a, quote, So some people who, let's say a person arrived in the United States in 1990, was placed in proceedings in early 1996, and then the IRA IRA amendments kick in. They've been held to take effect on April 1, 1997. So unless that person's suspension of deportation case has been heard and granted on that date, they will become ineligible because the issuance of the order to show cause in 1996 would stop their time here without the necessary seven years having accrued. So the stop time rules, excuse me, the repapering rules are there for the purpose of allowing people who would have been eligible but for the 96 amendments. Your understanding of the repapering policy is primarily to take care of the stop time rule. Yes. In situations where a person is not a permanent resident, it's not a criminal removal case, if the person is seeking classic suspension. And it doesn't take care of any of the other factors that go to what's now cancellation. No. If a person had a prima, prima. Extreme hardship. If a person had a prima facie case for suspension of deportation but for the 96 amendments and today has the ten years, has a qualifying relative for cancellation purposes, then they may request repapering. But unfortunately, we don't have an order to show cause in this case. If I may. Where in the regulations would we find that? There's a proposed. I can. There's a proposed regulation, and it's also in Section 303. I'll provide the citations. And I wish I had something more cheerful to tell you about this, but I can't, you know, I can't perpetrate a fraud on the court. I will provide the citations. If I may, though. Well, in this particular case, they had the ten years in. Yes. They had 14 years, I think. That's correct. So that's a, because they were not issued an order to show cause, they can't take advantage of the repapering provisions. Had they been issued an order to show cause, they would have been eligible for suspension because they had the seven years. They're not affected by the stop time rule. So in either case, either repapering would have been unnecessary had they had an order to show cause. As you noted, the judge would have, in fact, granted their suspension application. And had they not had an order to show cause, as is the case here, they can't make use of the repapering provisions because you can only move from an order to show cause to a notice to appear. If I may, though, I wanted to briefly address one point that counsel raised with regard to the voluntary departure issue. She stated that we, that the petitioners should have filed a motion for a stay of the voluntary departure period at the time they filed the petition for review. Again, the law of the circuit at that time was Contreras-Aragon, and the petitioners did file a motion for stay of removal, which they were clearly entitled to make. It's only subsequently, in fact, ten days ago, that this court has authorized the filing of a motion to stay the voluntary departure period. And that's why petitioners, they filed the only motion available to them at the time in May of 2002, which was a motion for stay of removal. As with the Zazueta-Carrillo case, that motion for a stay was denied. But in Zazueta-Carrillo, when they announced the change in the law, saying Contreras-Aragon will not apply in removal cases, they stated, okay, you made a motion for stay of removal. It was denied. That's fine. But since we're announcing a change in the law, we will allow you to take advantage of the Contreras-Aragon rule as it existed at the time you filed your motion for stay. And that's we are requesting the same benefit for the current petitioners. Okay. We understand that. And would you supply us? You can do it by letter, right, with this supplemental citation on the – On the re-papering? On the re-papering. Yes, I will. Thank you very much. And government can, too, if you want to, but you don't have to. I'm sorry. What was your comment? You're going to educate us. Well, that's not my intention, Your Honor. But I did want to make sure that you had the relevant statute in front of you. No, it's very helpful. We appreciate it. It is a strange provision. Thank you. And we've worked through it several times, so I'll be sure to provide it. All right. Thank you. Okay. Then this case is submitted. The next case is, in many ways, a very similar case. Villanueva v. Ashcroft.
judges: Hug, B Fletcher, Tashima